**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARC SAULNIER,<br><br>Plaintiff,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General, *et al.*,<br><br>Defendants. | Civil Action No. 23-905 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Marc Saulnier, a citizen of Canada, seeks to compel defendants, Merrick B. Garland, U.S. Attorney General ("AG"), Alejandro N. Mayorkas, Secretary of the U.S. Department of Homeland Security ("DHS"), and Troy A. Miller, Acting Commissioner of the U.S. Customs and Border Protection ("CBP"), in their official capacities (collectively, "defendants"), to adjudicate his Application for Advance Permission to Enter as Non-Immigrant ("Form I-192"), which was pending before CBP without decision for nearly 26 months at the time he initiated this lawsuit. *See* Compl. at Intro., ECF No. 1; *see also* Defs.' Mot. Dismiss ("Defs.' Mot.") at 2, ECF No. 23. Plaintiff claims that defendants have unreasonably delayed adjudication of his Form I-192, in violation of the Immigration Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* *See* Compl. at Causes of Action. Defendants now move to dismiss, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defs.' Mot. at 1. For the reasons explained below, defendants' motion is granted.

# I. BACKGROUND

A review of the statutory background underlying the two claims is below, followed by a summary of the factual and procedural history of this case.

## A. Statutory Background

The Immigration and Naturalization Act ("INA") allows a noncitizen deemed otherwise inadmissible to obtain a waiver of inadmissibility and temporarily be admitted into the United States. *See* 8 U.S.C. § 1182(d)(3)(A). The grounds for inadmissibility, as outlined in 8 U.S.C. § 1182(a), include individuals who are inadmissible for "criminal and related grounds." 8 U.S.C. § 1182(a)(2); *see also Dep't of State v. Muñoz*, 144 S. Ct. 1812, 1818 (2024) (explaining that a consular officer denying a visa application owes no explanation "'to any alien inadmissible' on certain grounds related to crime and national security." (quoting 8 U.S.C. § 1182(b)(3)). An individual who is inadmissible on this basis may be eligible for temporary admission, as the Attorney General may grant a waiver of inadmissibility if he or she "considers it to be in the national interest to do so." 8 U.S.C. § 1182(d)(1). A noncitizen may be "admitted temporarily despite his inadmissibility, be granted such a visa and may be admitted into the United States temporarily as a nonimmigrant in the discretion of the Attorney General." *Id.* § 1182(d)(3)(A).

A noncitizen seeking such a temporary waiver of inadmissibility may fill out a Form I-192, Application for Advance Permission to Enter as Non-Immigrant, with CBP. *See* https://www.uscis.gov/i-192 (last visited July 2024). The Secretary of Homeland Security has discretion over whether to approve a waiver application. *See* 6 U.S.C. § 557 (transferring discretion of the Attorney General to approve or disapprove a waiver application to DHS as a product of the Homeland Security Act of 2002). The INA provides that the Secretary of DHS "shall prescribe conditions, including exaction of such bonds as may be necessary, to control and

regulate the admission and return of inadmissible aliens applying for temporary admission." 8 U.S.C. § 1182(d)(3)(A).

**B. Factual Background**

Plaintiff is a Canadian citizen and businessman residing in Quebec. Compl. at Statement of Facts ¶ 1. On February 11, 2021, plaintiff filed a Form I-192 with CBP after receiving multiple denied entries to the United States, a rejected visa application, and a Notice of Intent to Deny a prior Form I-192. *See id.* ¶¶ 4–9. Plaintiff contends that "[h]is ability to travel between the United States and Canada to attend trade shows, conferences, and networking with other professionals is integral to the overall success of his business." *See id.* at Parties.

Plaintiff's difficulty entering the United States stems from his criminal record dating back to 2005. Specifically, in 2005, plaintiff "was involved in an altercation with an individual who had cut him off on his snowmobile," an offense which resulted in plaintiff pleading guilty to one count of simple assault under the Canadian criminal code. *Id.* at Statement of Facts ¶ 1. Three years later, in 2008, plaintiff was asked to leave a drinking establishment associated with a golf and amusement park by a security guard who deemed that plaintiff was intoxicated. *Id.* ¶ 2. Upon leaving the establishment, plaintiff stole and damaged a golf cart, which resulted in his conviction for petty theft and assault under the Canadian criminal code. *Id.*[1] Five years later, in 2013, plaintiff got into a physical altercation with a fellow attendee at a sporting event and pled guilty to a charge of Assault Causing Bodily Harm. *Id.* ¶ 3.

[1] Plaintiff describes his actions during this altercation as simply "proceed[ing] to take a ride on a golf cart belonging to La Ronde Golf and Amusement Park and damag[ing] it." Compl. ¶ 2. No matter whether this description underplays the seriousness of his conduct, plaintiff indisputably was convicted for Petty Theft and Assault. *See id.* Plaintiff's Petty Theft conviction, combined with the fact that this conduct occurred immediately after plaintiff was asked to leave an establishment that serves alcohol for inappropriate intoxication, suggests that plaintiff, while intoxicated, in fact stole the golf cart, drove it, and damaged it. *See id.* Plaintiff states that he was "tried summarily and received an absolute discharge" after this conviction. *Id.*

Plaintiff was initially denied entry into the U.S. on July 23, 2011, at Pearson International Airport. *Id.* ¶ 4. After this initial denial he contacted the United States Consulate in Montreal and applied for entry again in April 2015 and July 2015 at the Chaplin Border Crossing, upon their guidance. *Id.* These applications were again refused. *Id.* At the advice of a CBP officer, he then applied for a business visa at the United States Consulate in Quebec, but that application was rejected on August 9, 2016. *Id.* Plaintiff then submitted his first I-192 Application for Advance Permission to Enter as a Non-Immigrant, although he fails to provide the date upon which he submitted this initial application. *Id.* ¶ 5. After submitting this application, he received a "Notice of Intent to Deny on the basis that Mr. Saulnier is allegedly gang affiliated with the Hells Angels," *id*., prompting him to withdraw this I-192 application on an unknown date, *see id.*

Plaintiff then filed multiple Freedom of Information Act ("FOIA") requests with multiple U.S. agencies, including USCIS, the Department of State, the Department of Homeland Security, and CBP. *Id.* ¶ 6. He received a response from the State Department stating that "no records or information were located relating to the alleged affiliation with the 'Hells Angels.'" *Id.* ¶ 7. DHS withheld responsive records from plaintiff under the FOIA Exemptions for personal privacy. *Id*. Plaintiff assumes from this that his "alleged affiliation was from the level of the U.S. Department of Homeland Security and U.S. Customs and Border Protection," and claims that "there is only speculation regarding his alleged 'affiliation,' there is no basis or fact that can definitively determine Mr. Saulnier's affiliation with above mentioned." *Id*. Plaintiff avers that this speculation is causing him "significant and severe travel issues." *Id.*

Plaintiff filed a second Form I-192 application, which is at issue in this lawsuit, on February 11, 2021. *See* Compl. at Intro.; Defs.' Mot. at 2. He asserts that "[d]espite numerous

inquiries dating back over a year . . . DHS has not adjudicated Mr. Saulnier's I-192 application." Compl. at Statement of Facts ¶ 9.

**C. Procedural History**

On April 3, 2023, nearly 26 months after filing his second Form I-192, plaintiff filed the instant petition, seeking, among other requested relief, an order compelling "DHS to adjudicate and approve [his] Application for Advance Permission to Enter as Non-Immigrant within 30 days or other reasonable period." *See* Compl. at Request for Relief; *see also* Defs.' Mot. at 2. Plaintiff maintains that defendants retain jurisdiction over his Form I-192 and that their delay is unreasonable and in violation of the INA and APA. *See* Compl. at Causes of Action. He has now been waiting approximately 41 months for adjudication of his application.

On August 9, 2023, plaintiff filed a Motion for Default Judgment, arguing that defendants failed to comply with Rule 12 and file an answer "within sixty (60) days from the date [d]efendants were served with [p]laintiff's Complaint." *See* Pl.'s Mot. Default J. ("Pl's Mot. Default J.") at 3, ECF No. 14. On September 18, 2023, plaintiff's motion was denied, as defendants' lack of response was due to plaintiff's own failure to effect proper service on defendants. *See* Minute Order (Sept. 18, 2023). Prior to the denial of plaintiff's motion for default, defendants filed a combined response to plaintiff's motion for default and motion to dismiss plaintiff's complaint on the basis of improper service. *See* Defs.' Mot. to Dismiss and Memorandum in Supp. Thereof and Opp'n to Pl.'s Mot. for Default ("Def.'s Mot. and Opp'n"), ECF No. 17. Defendants' motion to dismiss for improper service was denied as premature. *See* Minute Order (Sept. 18, 2023) (explaining that Fed. R. Civ. P. 4(i)(4)(A) provides that "[t]he court must allow a party a reasonable time to cure its failure to . . . (A) serve a person required to be served under Rule 4(i)(2), if the party has served . . . the Attorney General of the United

States," which plaintiff had done in this case.). Plaintiff subsequently effectuated service properly on October 5, 2023.

On December 4, 2023, defendants again moved to dismiss the complaint, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defs.' Mot. at 1, which motion plaintiff opposes, *see* Pl.'s Opp'n Defs.' Mot. ("Pl.'s Opp'n"), ECF No. 25. This motion is now ripe for resolution. *See* Defs.' Reply Pl.'s Opp'n ("Defs.' Reply"), ECF No. 26.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 980 (D.C. Cir. 2017) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff thus "bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

When a jurisdictional argument "present[s] a dispute over the factual basis of the court's subject matter jurisdiction," "the court must go beyond the pleadings and resolve" any dispute necessary to the disposition of the motion to dismiss. *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (alteration in original) (quoting *Phoenix Consulting v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). The court must accept as true "material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). In addition,

however, the "court may properly consider . . . evidentiary material in the record," again affording the plaintiff "the benefit of all reasonable inferences." *Feldman*, 879 F.3d at 351.

**B. Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but "that allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023). In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555 (citations omitted). Courts do not, however, "assume the truth of legal conclusions . . . or 'accept inferences that are unsupported by the facts set out in the complaint.'" *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007), and citing *Iqbal*, 556 U.S. at 678, and *Kareem v. Haspel*, 986 F.3d 859, 865–66 (D.C. Cir. 2021)). "In determining whether a complaint fails to state a claim," a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Marshall's Locksmith Serv. Inc. v. Google*, LLC, 925 F.3d 1263, 1271–72 (D.C. Cir. 2019) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## III. DISCUSSION

Defendants seek dismissal of plaintiff's claims on grounds that: (1) subject matter jurisdiction is lacking because the APA and the INA "bar judicial review of the type of discretionary relief Plaintiff seeks," Defs.' Mot. at 1, and neither DHS nor CBP have any nondiscretionary duty to adjudicate an application to waive inadmissibility, as would be necessary for plaintiff to pursue an APA claim," *id*.; and (2) plaintiff "fails to plead a plausible claim of unreasonable delay under the factors set forth in *Telecommunications Research & Action Center*[,]" *id.* (citing *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)).[2] For the reasons outlined below, plaintiff's claims are dismissed for failure to state a claim.

### A. Judicial Review Is Assumed

Defendants contend that plaintiff's claims should be dismissed because the INA and APA bar judicial review of the pace of adjudication of Form I-192 applications. *See* Defs.' Mot. at 4. As defendants note, the APA bars judicial review of agency actions when: (1) "statutes preclude judicial review," or (2) "agency action is committed to agency discretion by law." *See id.* (citing 5 U.S.C. § 701(a)). In addition, defendants point out that the INA "explicitly strips a court of the power to review or compel the Secretary of Homeland Security, and by extension his delegate the Commissioner of CBP, to take any action that the INA specified as discretionary." Defs.' Mot. at 4 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)). Judicial review of a delay in adjudicating an application differs, however, from review of a discretionary final decision, and the APA and INA

[2] Defendants also argue that plaintiff presents "no case or controversy" against the AG, who has "no alleged role or authority over [p]laintiff's waiver application," Defs.' Mot. at 1, since the DHS Secretary "has the authority over the adjudication of waiver applications, which is delegated to CBP," *id.* at 4. Plaintiff concedes this point, stating that he is "not in opposition to dismissing the Attorney General from the matter as Defendants, the Secretary of Homeland Security, and the Commissioner of U.S. Customs & Border Protection are the proper Defendants in this case." Pl.'s Opp'n at 6. The AG will thus be dismissed.

bar only the latter. *See Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *3 (D.D.C. June 10, 2020) (holding the "doctrine of consular nonreviewability" is not triggered until a consular officer has made a final decision).

Plaintiff seeks judicial review of CBP's *delay* in reaching a final decision on his Form I-192, not of the agency's final decision on his visa or waiver applications. *See* Compl. at Causes of Action. Therefore, "even if the initial [or subsequent] refusal of the visa is unreviewable under the doctrine of consular nonreviewability . . . absent a final decision on the waiver, the doctrine of consular nonreviewability 'does not prevent the Court from considering [a] claim that the Government has unreasonably delayed rendering a decision.'" *Sarlak*, 2020 WL 3082018, at *3. To be sure, this case involves an application for a waiver of denial of admissibility on "criminal and related grounds," 8 U.S.C. § 1182(a)(2), and not just a pending visa application. The question of whether failure to adjudicate such a waiver application may be reviewed under the APA has been met with conflicting results.

For example, in considering a waiver of inadmissibility set out in a 2017 Proclamation published by Executive Order, another Judge of this Court determined that "there is no separate statute giving an applicant the right to a waiver or the right to have a waiver application adjudicated in a certain manner," and that any such right would have to be expressly included in the Proclamation. *Jafari v. Pompeo*, 459 F. Supp. 3d 69, 75–76 (D.D.C. 2020) (Lamberth, J.). (citing Proclamation 9645, 82 Fed. Reg. 45161 (2017)). Seeing no such right in the Proclamation, the court concluded that "plaintiffs have no right to have the waiver adjudicated in any specific amount of time," and that the application of the *TRAC* factors was thus irrelevant, "due to the Proclamation's express refusal to create any substantive or procedural rights." *Id.* at 76–77. In contrast, in *Ashtari v. Pompeo*, 496 F. Supp. 3d 462, 469 (D.D.C. 2020) (Mehta, J.),

another judge of this Court reasoned that plaintiffs and sufficiently alleged facts "to plausibly establish that Defendants were bound by policies or internal agency guidance requiring them to decide Mr. Ashtari's waiver eligibility," and that, while the decision to grant or deny the waiver was committed to the executive branch, "the agency action they seek to compel—a decision on the waiver itself—is not."

This Court will assume that the delay in adjudicating the application for waiver of inadmissibility is reviewable under the APA and not barred, including by the doctrine of consular nonreviewability. *See, e.g., Kangarloo v. Pompeo*, 480 F. Supp. 134, 141 (D.D.C. 2020) (Nichols, J.) (making same assumption to reach merits) (collecting cases); *Didban v. Pompeo*, 435 F. Supp. 168, 175 (D.D.C. 2020) (Cooper, J.) ("The Court assumes without deciding that the Government's failure to issue a waiver decision is reviewable under the APA, but nonetheless concludes that Plaintiffs have failed to state a claim because the two-year delay in adjudicating her application is not unreasonable under the circumstances."). Consequently, plaintiff's claims are reviewed to consider the reasonableness of any delay in adjudicating his waiver application.[3]

[3] Defendants additionally claim that plaintiff's unreasonable delay claim fails because "a delay cannot be unreasonable with respect to action that is not required." *See* Defs.' Mot. at 9 (internal quotation omitted). The Court also assumes, without deciding, that a mandatory non-discretionary agency action applies here in the form of the statutory requirement that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Absent binding precedent or a consensus on this Court supporting plaintiff's position that the INA imposes a non-discretionary duty on the government to adjudicate visas, *see, e.g.*, *Khamrabaeva v. Blinken*, No. 22-cv-1219 (RC), 2022 WL 4446387, at *5 (D.D.C. Sept. 24, 2022) (surveying different approaches to this question), this assumption of reviewability allows consideration of the merits of this visa mandamus claim, *see Muñoz*, 144 S. Ct. at 1820 n. 4 (2024) (confirming that "the doctrine of consular nonreviewability is not jurisdictional" and that the Supreme Court has "assume[d] without deciding that [the] plaintiffs' statutory claims were reviewable."); *Almaqrami v. Pompeo*, 933 F.3d 774, 784 n. 3 (D.C. Cir. 2019) ("[C]ourts may assume without deciding that plaintiffs' statutory claims are reviewable and proceed to the merits notwithstanding consular nonreviewability." (internal quotation marks and citations omitted)).

**B. Adjudication Delay Is Not Unreasonable.**

Defendants contend that plaintiff's allegations about the delay in adjudicating his I-192 waiver application, even if assumed to be true, are insufficient to state a plausible claim for relief because the delay at issue is not unreasonable. *See* Defs.' Mot. at 12. "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take' . . . and, second, that the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), and *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 621 (D.C. Cir. 2020)).

In determining whether a delay in agency action is unreasonable, the D.C. Circuit has enumerated six so-called "*TRAC*" factors for consideration:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal citations omitted and formatting modified); *see also Da Costa*, 80 F.4th at 340 ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors." (citing *id.*)); *Mukkavilli v. Jaddou*, No. 23-5138, 2024 WL 1231346, at *1 (D.C. Cir. Mar. 22, 2024) (per curiam) (same). This standard applies to claims of unreasonable delay under the APA. *See Norton*, 542 U.S. at 63–64; *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

Under the assumptions made, *supra* in Part III.A., application of the *TRAC* factors is appropriate here, as factual allegations have been fulsomely supplied and specific dates when relevant agency action occurred are undisputed. *See, e.g.*, *Mukkavilli*, 2024 WL 1231346, at *1–2 (affirming dismissal of unreasonable-delay claim following weighing of *TRAC* factors); *Da Costa*, 80 F.4th at 339–46 (same); *see also Mokkapati v. Mayorkas*, No. 21-cv-1195 (BAH), 2022 WL 2817840, at *4 n.4 (D.D.C. July 19, 2022) (collecting cases reflecting "the majority view in this District [] that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay"). Here, the record provides sufficient discernible and undisputed facts to evaluate the *TRAC* factors and determine whether plaintiff's complaint alleges facts sufficient to state a plausible claim for unreasonable administrative delay. In this case, the agency's delay in adjudicating plaintiff's Form I-192 is not unreasonable.

**1. *TRAC Factors 1 & 2***

The first *TRAC* factor—whether the agency follows a rule of reason in processing visas—is among the "most important in this case," *Da Costa*, 80 F.4th at 340; *see also Afghan and Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024); *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), and is often considered together with the second *TRAC* factor—whether "Congress has established a timetable," *Mukkavilli*, 2024 WL 1231346, at *1. Both factors weigh in defendants' favor.

The D.C. Circuit has explained that, in assessing the first *TRAC* factor, "whether an agency follows a rule of reason, we evaluate the length of the delay in light of 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" *Da Costa*, 80 F.4th at 340 (quoting *Mashpee*, 336 F.3d at 1102). To "supply

content for th[e] rule of reason," *TRAC*, 750 F.2d at 80, plaintiff notes that "CBP is currently publishing to the public an average adjudication wait time of 6 to 12 months," Pl.'s Opp'n at 12, and seeks to use this information to establish the unreasonableness of his own wait time, which is at least double the published average wait time of up to 12 months, *see id.* at 14. Notwithstanding plaintiff's reasoning, however, such published timeframes provide only "averages" and, in any event, are not the measure, as a legal matter, of the reasonableness of agency delay. As the D.C. Circuit has instructed, an agency's published timeline is "only one consideration among many." *Afghan and Iraqi Allies*, 103 F.4th at 817.

Moreover, plaintiff barely acknowledges the complexity of the actual task at hand, which requires careful assessment of any risk plaintiff may pose to the safety and security of Americans if permitted to enter the United States, given his prior criminal record that spans over a decade, involving both property damage and assault on other persons. This task may require collection and review of documentation related to plaintiff's criminal record and may trigger the need for review of the facts underlying plaintiff's convictions, including those outside the record of conviction—all of which takes time.

Consideration of whether agency adjudication delays are unreasonable necessarily implicates the statutory deadlines imposed by Congress, which is the second *TRAC* factor, and "the level of disproportionality we have previously held sufficient to grant relief." *Id.* at 344. As defendants correctly point out, Congress has set "no statutory or regulatory timeframe within which DHS or CBP must adjudicate a waiver application," Defs.' Opp'n at 13, but instead gives agencies "wide discretion" in their immigration processing timelines, *id*. (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)); *see Da Costa*, 80 F.4th at 339–40 (finding "the absence of a statutory deadline . . . also favor[s] dismissing the claims"); *Didban*, 435 F.

Supp. 176 ("Congress has supplied no timeline for processing waiver applications."). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Kahenya v. Blinken*, No. 23-cv-740 (TSC), 2024 WL 1253854, at *3 (D.D.C. Mar. 25, 2024) (citation omitted). Courts have drawn no bright lines to determine reasonableness, but "[d]ecisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances." *Didban*, 435 F. Supp. 176 (quoting *Trump v. Hawaii*, 58 U.S. 667, 702–03 (2018)) (internal quotation marks omitted). "[I]n the related context of asylum applications, '[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.'" *Yavari v. Pompeo*, No. 19-cv-2524 (SVW) (JC), 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019); *see also Tahavori v. Blinken*, No. 23-cv-1460 (JDB), 2024 WL 1328546, at *4 (D.D.C. Mar. 28, 2024) (citing cases noting the same); *Skalka*, 246 F. Supp. 3d at 153–54 (finding that a roughly two-year delay in processing a visa application is not unreasonable); *see also Farooqui*, 2024 WL 1178468, at *5 (same). Notably, in *Da Costa*, the D.C. Circuit affirmed dismissal of a visa applicant's unreasonable delay claim, concluding that, while "undoubtedly maddening," the four-and-a-half-year delay "is not sufficient to show that USCIS does not follow a rule of reason in processing EB-5 applications." 80 F.4th at 339–340, 342. Here, the complex task confronting consular officials involves assessment of plaintiff's risk of dangerousness if granted the waiver to inadmissibility he seeks. This context is important. As the D.C. Circuit has instructed, reasonableness "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and

permanence) of the outcome, and the resources available to the agency." *Mashpee*, 336 F.3d at 1102; *see also Da Costa*, 80 F.4th at 340.

Consideration of agency resources and the context of an agency action is critical to the determination of reasonableness. *See Da Costa*, 80 F.4th at 342 ("When an agency faces a shortage of resources to resolve a backlog, we consider those resource limitations and the labor needed to resolve them in assessing agency delay." (citing *Mashpee*, 336 F.3d at 1100, 1102)). In 2020, about three years before plaintiff filed the instant complaint, U.S. consulates and embassies shut down across the globe due to the COVID-19 pandemic. The visa backlog due to the COVID-19 pandemic and strain on agency resources following the health crisis is important context with an impact on the processing times for visa applications, including visa waivers. These circumstances weigh in defendants' favor in the *TRAC* factor analysis. *See Da Costa*, 80 F.4th at 342 (citing global pandemic as consideration in assessing first *TRAC* factor); *Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at *3 (D.D.C. Feb. 16, 2022) (finding that "operational delays due to the COVID-19 pandemic favor the [g]overnment on the first two [*TRAC*] factors" (citations omitted)); *see also Kahenya*, 2024 WL 1253854, at *3 (same); *Rahimian*, 2023 WL 143644, at *7 (same); *Khan v. Blinken*, No. 21-cv-1683 (JEB), 2021 WL 5356267, at *4 (D.D.C. Nov. 17, 2021) (same); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (same).

Taken altogether, the first and second *TRAC* factors favor defendants.

**1. *TRAC Factor 4***

The fourth *TRAC* factor considers whether "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80 (citations omitted). Defendants correctly point out that this factor "carries significant weight" in

the *TRAC* analysis. *See* Defs.' Mot. at 15 (citing *Mashpee*, 336 F.3d at 1100). This factor weighs heavily in defendants' favor, particularly in the context of reducing the accumulated backlog from the COVID-19 pandemic.

Granting expedited agency action is considered inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants,'" with "'no net gain'" in adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (quoting *Burwell*, 812 F.3d at 192, and *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). In particular, "where resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005).

Plaintiff advances no practical explanation to overcome the logistical issue, given limited government resources and orderly processing methods, leading to the conclusion that expediting plaintiff's application would further delay other waiver applications. *See* Pl.'s Opp'n at 13. His argument "that granting relief would not prejudice other applicants rests on wishful thinking about how the USCIS adjudication system works." *Da Costa*, 80 F.4th at 343. Post-pandemic, normal visa processing requires accommodating the backlogs of the hundreds of thousands of visa applications still awaiting adjudication due to staffing and resource shortages arising during the height of the COVID-19 pandemic. While plaintiff explains that he "merely wants his waiver application adjudicated within the published CBP time frames," which are currently advertised as "6 to 12 months," Pl.'s Opp'n at 14, expediting review in plaintiff's case "would necessarily come at the expense of other similarly situated applicants, unlike broader relief that would avoid line-jumping concerns," *Da Costa*, 80 F.4th at 344 (quotation marks and citation omitted); *see also Bagherian*, 442 F. Supp. 3d at 95 (finding fourth *TRAC* factor favors the government, where "[e]xpediting review in [plaintiff's] case . . . would merely pull government

resources" away from other visa adjudications and agency business); *Didban*, 435 F. Supp. 3d at 176 (holding that reordering agency business "would impermissibly interfere with the agency's 'unique' and 'authoritative [] position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way'" (alteration in original) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d at 76) (other citation omitted)); *see Immigrant Visa Interview-Ready Backlog Report*, U.S. DEP'T OF STATE, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html (last updated June 2024) (providing data and information about the backlog in visa applications still faced by the State Department post-pandemic). Since the D.C. Circuit recognizes "no basis for reordering agency priorities," *In re Barr Lab'ys, Inc.*, 930 F.2d at 76, this factor weighs in favor of defendants.

**2. *TRAC Factors 3 and 5***

The third and fifth *TRAC* factors are related and together examine "the nature and extent of the interests prejudiced by the delay," including whether "human health and welfare" might be implicated. *TRAC*, 750 F.2d at 80 (citations omitted); *see Da Costa*, 80 F.4th at 344–45 (considering *TRAC* factors three and five together). As discussed, *supra*, in connection with *TRAC* factor 4, the third factor looks to the impact and potential prejudice on others from granting plaintiff's demanded relief and, here, that requires attention to "the many others [who] face similarly difficult circumstances as they await adjudication of their visa applications." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) (internal quotation marks and citation omitted). Catapulting plaintiff to the front of the line by court ordered priority would necessarily push other noncitizens back.

Putting aside the interests of other noncitizens potentially affected by expediting plaintiff's application, plaintiff claims that he "has been and will continue to be irreparably

harmed because of the unreasonable delay of DHA in adjudicating his waiver application." Compl. at Statement of Facts ¶ 10; Pl.'s Opp'n at 12–13. Yet, as defendants note, "the only harm he identifies is that his ability to travel to the United States 'is integral to the overall success of his business.'" Defs.' Mot. at 16.[4] Defendants contend that, "[e]ven if true, [p]laintiff's allegations are insufficient to support a finding that the third and fifth TRAC factors favor him" since "[p]laintiff's purported economic harm is not the type of harm that implicates health and welfare." *Id.* Indeed, the D.C. Circuit has found that the third and fifth factors did not favor noncitizens when the noncitizen failed "for example, [to] allege that they are unable to access electricity, water, food, or shelter" due to delays in immigration benefits adjudication. *Da Costa*, 80 F.4th at 345.

Thus, considering the nature of the harm alleged to be experienced by this particular plaintiff due to further delay in adjudicating his waiver application, *TRAC* factors 3 and 5 weigh in defendants' favor.

**3. *TRAC Factor 6***

The sixth and final *TRAC* factor provides that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *TRAC*, 750 F.2d at 80 (citation omitted). Plaintiff alleges he "has no way of knowing whether the agency has or is acting in bad faith," but maintains that "lack of the [d]efendant's impropriety does not impair an otherwise strong claim." *See* Pl.'s Opp'n at 14.

---

[4] Plaintiff cites several cases supporting the notion that "delays in the immigration context jeopardize human welfare and significantly prejudice noncitizens," but this is not the kind of harm plaintiff alleges he faces. *See* Pl.'s Opp'n at 12–13.

**4. *TRAC Factors Considered in Totality***

Taking all six *TRAC* factors as a whole, plaintiff has not stated a claim of unreasonable delay under the APA. In other cases, delays in visa processing of longer duration than presented here have resulted in the same conclusion, and this Court applies the same reasoning to the adjudication of plaintiff's Form I-192. *See, e.g.*, *Da Costa*, 80 F.4th at 342 (concluding a four-and-a-half year processing delay does not "itself establish[] that USCIS lacks a rule of reason"); *Akrayi v. U.S. Dep't of State*, No. 22-cv-1289 (CRC), 2023 WL 2424600, at *3 (D.D.C. Mar. 9, 2023) (finding the nearly three-year "delay in processing . . . does not reach the length that courts have found unreasonable"); *Rahimian*, 2023 WL 143644, at *7 (reaching the same conclusion based on visa processing delay of forty-one months); *Arab*, 600 F. Supp. 3d at 70 (same, based on visa processing delay of thirty months); *Zaman*, 2021 WL 5356284, at *6–7 (same, based on visa processing delay of forty-two months). The context of agency resource backlogs stemming from the COVID-19 pandemic, and the fact that granting plaintiff relief would merely reorder his waiver application in the queue, all support the conclusion that the delay in adjudication of plaintiff's Form I-192 is not unreasonable.

While appreciating that plaintiff's wait is frustrating for him, the Court also recognizes countless other noncitizens are facing similar or even worse timetables as they await immigration decisions. *See Da Costa*, 80 F.4th at 346 (affirming dismissal where "[r]uling in favor of Plaintiffs would require USCIS to process Plaintiffs' petitions ahead of those of other petitioners who have been waiting as long or longer for their EB-5 petitions to be adjudicated"); *Burwell*, 812 F.3d at 192 (collecting cases "reject[ing] mandamus claims that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of

other similarly situated applicants"). Plaintiff's complaint thus must be dismissed for failure to state a claim.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's complaint is granted. An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: July 29, 2024

**BERYL A. HOWELL**
United States District Judge